*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY S. VALDES,

        Plaintiff-Appellee,

v

MENARD, INC.,

        Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 344073
Jackson Circuit Court
LC No. 17-001703-NO

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this premises liability action, defendant Menard, Inc. (Menards) appeals by delayed leave granted[1] the trial court's order denying its motion for summary disposition. For the reasons set forth in this opinion, we reverse and remand.

## I. BACKGROUND

On the afternoon of January 15, 2017, plaintiff went to Menards with her husband, mother, and stepfather to look at "stick-um linoleum" for use in her home. Plaintiff grabbed one of the loose, individual sample tiles that were at "eye level," and another box of tiles weighing approximately 40 pounds fell onto plaintiff's foot. Plaintiff sustained serious injuries to her foot. Plaintiff believed that the box fell from the second or third shelf. She did not know what caused the box to fall, and she testified that she did not do anything to cause the box to fall. Plaintiff further testified that she believed that the tiles were shelved improperly because the shelves did not have a lip to keep the boxes from falling off.

Cody Lyerla, a Menards employee who worked in the flooring department, testified in his deposition that he was working on the day of the incident and that he "faced the aisle" before he

---

[1] *Valdes v Menard, Inc.*, unpublished order of the Court of Appeals, entered November 30, 2018 (Docket No. 344073).

went to lunch. He explained that facing the aisle involves making the product flush with the edge of the shelving. Lyerla stated, "I know the aisle was pretty perfect." Lyerla's manager, Jason Mick, testified that when he arrived for work at noon, Lyerla told him that he primarily had worked on facing the particular aisle where the accident later occurred. Mick indicated that "everything looked immaculate," and he also testified that this particular aisle was one that employees and customers walked down frequently. According to Mick, employees were trained to take care of any condition that looked unsafe "right away."

Lyerla testified that when he returned from lunch, there was caution tape at both ends of the aisle and Mick told him about the incident. Lyerla's lunch break was "[a]pproximately 30 minutes, give or take 5." Lyerla did not know if anyone had gone into the aisle between the time he finished facing it and the time of the accident. He testified that while he was working, he would walk around his eight-aisle department and straighten the aisles. According to Lyerla, because the tile boxes were pretty heavy and 12 inches long, it would take some effort for somebody to pull a box off of the shelf even if it was partially hanging over the edge. Lyerla was not aware of an incident like this one, where a product fell off of a shelf and injured a customer, having occurred before in the Menards flooring department. Adriana Steelman, another Menards employee who had worked for Menards for over nine years, also testified that she was not aware of any previous incidents where a customer was injured by a box of tile falling from the shelf.

Following the incident, plaintiff initiated this lawsuit and filed a one-count complaint alleging that defendant had failed to exercise ordinary care in maintaining its premises and keeping its premises in a reasonably safe condition for its invitees, including plaintiff. Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), arguing in relevant part that plaintiff had failed to produce any evidence that a hazardous condition existed or that defendant had actual or constructive notice of any such condition if it had existed. The trial court denied defendant's motion, and this appeal ensued.

## II. STANDARD OF REVIEW

A trial court's grant or denial of summary disposition is reviewed "de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "Questions regarding whether a duty exists are for the court to decide as a matter of law." *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014). "The issue of whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 19; 930 NW2d 393 (2018). "Issues of law are also reviewed de novo." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 477; 760 NW2d 287 (2008).

When evaluating a motion for summary disposition under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to

the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. "The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed fact exists, and the disputed factual issue must be material to the dispositive legal claim." *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003) (citation omitted).

## III. ANALYSIS

As an initial matter, although plaintiff's complaint did not expressly label her claim as one of premises liability, the parties have treated it as a premises liability action and from plaintiff's claim, we find the action sounds in premises liability. See *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012) ("If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.").

A plaintiff asserting a premises liability action "must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Mouzon*, 308 Mich App at 418 (quotation marks and citation omitted). A landowner's duty to a visitor depends on whether the visitor is classified as a trespasser, licensee, or invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). The parties in this case do not dispute that plaintiff was an invitee. "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id*. at 597. Therefore, defendant's duty to plaintiff was that owed to an invitee, which is "the highest level of protection under premises liability law." *Id*. at 597.

Our Supreme Court has explained the duty owed to invitees, and when a premises possessor may be liable for a breach of this duty, as follows:

> With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [*Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (citation omitted).]

Accordingly, a premises liability claim requires a plaintiff "to establish that defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 10; 890 NW2d 344 (2016). The *Lowrey* Court further explained the legal principles regarding a premises owner's liability based on notice of a dangerous condition:

> "The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees; and he is liable when the unsafe condition, otherwise caused, is known to the storekeeper or is of

-3-

such a character or has existed a sufficient length of time that he should have knowledge of it." [*Id.* (citation omitted).]

"The plaintiff, however, bears the burden of proof of establishing that the defendant breached this duty of care, i.e., the defendant knew or should have known 'of a dangerous condition on the premises of which the invitee [was] unaware and fail[ed] to fix the defect, guard against the defect, or warn the invitee of the defect.' " *Id.* at 10 n 2 (citation omitted; alterations in original).

In this case, there was no evidence to demonstrate that defendant had actual or constructive notice of any hazardous condition. Both plaintiff and her husband testified that they did not see any boxes of tile hanging out from the shelves and that they did not see any safety concerns when they first approached the aisle, although plaintiff's stepfather testified that he pushed some boxes of tile back in after the accident because they had been sticking out from the shelf. There was also undisputed evidence that at some point less than approximately 30 minutes before plaintiff and her family entered the aisle, Lyerla had made sure that the product in that aisle was flush with the edge of the shelving. The record reflects that plaintiff and her family members were the only people in the aisle when they arrived to look at the linoleum tile, and there was no evidence that anyone had entered the aisle between the time when Lyerla finished facing it and the time when plaintiff entered the aisle with her family.

Viewing the evidence in the light most favorable to plaintiff and assuming that there were boxes of tiles protruding from the shelves that constituted a hazardous condition, there still was no evidence regarding when this condition arose or how long it had been present before plaintiff arrived in the aisle. Hence, plaintiff did not introduce any evidence from which it could be inferred that the condition was of such a character or had existed for such a length of time that defendant's employees should have had knowledge of such a condition. *Lowrey*, 500 Mich at 10; see also *Clark v Kmart Corp*, 465 Mich 416, 420-421; 634 NW2d 347 (2001) (concluding that there was sufficient evidence for a jury to find that the dangerous condition of loose grapes on the floor had existed for an amount of time long enough that the defendant should have known about the condition because there was testimony that the check-out lane where the condition existed had been closed about an hour before the plaintiff arrived, which permitted the inference that the grapes had been on the floor for at least an hour).

Furthermore, no evidence exists in the record from which we could infer that any of defendant's employees had actual notice of any hazardous condition in the aisle, nor is there any evidence that any of defendant's employees negligently caused a hazardous condition. The undisputed evidence reflects that Lyerla instead made sure that no tile boxes were protruding from the shelves. Therefore, plaintiff failed to establish that a question of fact existed regarding whether defendant had actual or constructive notice of any hazardous condition, and the trial court should have granted summary disposition in favor of defendant for this reason. *Lowrey*, 500 Mich at 11 ("We hold that plaintiff failed to proffer evidence sufficient to demonstrate a question of fact regarding defendant's actual or constructive notice of the hazardous condition, and defendant was entitled to summary disposition on this basis."). Plaintiff failed to meet her burden of producing evidence that defendant knew or should have known of a dangerous

condition. *Id*. at 10 n 2. Contrary to plaintiff's argument, defendant was not required to produce evidence of a routine or reasonable inspection in order to prove its lack of constructive notice of a dangerous condition[2] and be entitled to summary disposition;[3] a premise owner may "establish its entitlement to summary disposition by demonstrating that plaintiff failed to present sufficient evidence of notice." *Id*. at 10.

The trial court seemed concern about the apparent factual disputes about the actual cause of the fall, and plaintiff on appeal relies heavily on arguing that there were factual disputes about what caused the fall. However, such considerations are irrelevant under these circumstances because there is no evidence that defendant had actual or constructive notice of any hazardous condition presented by the box of tile. Thus, even if plaintiff did not cause the tiles to fall, there is no evidence from which to conclude that defendant breached a duty because there is no evidence that defendant had actual or constructive notice of a hazardous condition and there is no evidence that defendant's employees caused a hazardous condition. The trial court erred by not focusing on this dispositive issue. See *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App at 333.

Next, plaintiff argues that the doctrine of res ipsa loquitur applies because a 40-pound box of tile does not fall absent negligence, and plaintiff and her family members all testified that plaintiff did not touch the tile box that fell. However, we conclude that res ipsa loquitur is inapplicable and does not operate to create a material question of fact in this case.

> In order to avail themselves of the doctrine of res ipsa loquitur, plaintiffs must meet the following conditions:
>
> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Pugno*, 326 Mich App at 19 (quotation marks and citation omitted).]

---

[2] Notably, defendant nonetheless did produce evidence that the aisle was regularly inspected and faced.

[3] See *Lowrey*, 500 Mich at 10 ("[T]his Court has never required a defendant to present evidence of a routine or reasonable inspection under the instant circumstances to prove a premises owner's lack of constructive notice of a dangerous condition on its property.").

In this case, the record evidence reflects that plaintiff was in defendant's retail store and was injured when a box of tile fell on her foot while she was in the store aisle. Merchandise set out on display in a retail store is subject to being handled by customers in the store,[4] which in this case included plaintiff and her family. The fact that plaintiff and her family testified that they did not touch the boxes of tiles does not affect the conclusion that these boxes were not *exclusively* in defendant's control.

Our conclusion is supported by this Court's decision in *Hasselbach v TG Canton, Inc*, 209 Mich App 475; 531 NW2d 715 (1994). In *Hasselbach*, the plaintiff's injuries stemmed from a slip and fall in her apartment that was owned by two of the defendants in the case. *Id*. at 477. The plaintiff's claim was premised on the allegation that a sudden surge in hot water from the shower head set in motion the events that led to her injury. *Id*. at 477-478. This Court, in rejecting the plaintiff's res ipsa loquitur argument, stated as follows:

> In the case at bar, however, the event was not caused by an agency or instrumentality within defendants' exclusive control. Specifically, a possible explanation of the events leading up to this accident is that plaintiff, in attempting to turn down the hot water, actually turned the hot water up. The fact that plaintiff denies having turned the hot water up instead of down does not change the fact that the instrumentality was not exclusively within defendants' control and, therefore, the doctrine of res ipsa loquitur does not apply." [*Id*. at 480.]

Thus, in this case, there was no genuine issue of material fact that the tile box was not within the exclusive control of defendant, and the doctrine of res ipsa loquitur is inapplicable under the circumstances of this case. *Pugno*, 326 Mich App at 19; *Hasselbach*, 209 Mich App at 480.

Finally, in light of the above conclusion that defendant was entitled to summary disposition in its favor, defendant's additional argument that the condition was open and obvious is moot and we decline to address it. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

IV. CONCLUSION

Because there was no evidence that defendant had actual or constructive notice of any allegedly dangerous condition on the premises, the trial court erred by denying defendant's motion for summary disposition. We therefore reverse and remand this matter for entry of an order granting summary disposition in defendant's favor.

Reversed and remanded for entry of summary disposition in favor of defendant. No costs

---

[4] Although this seems obvious, Steelman also testified to this fact in her deposition that the boxes would get somewhat disorganized as customers looked at them throughout the day but that the aisle at issue in this case had just been faced by Lyerla shortly before the incident occurred.

are awarded.  MCR 7.219(A).  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto